1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

THERESA JONES, individually and as Executrix of the Estate of LANDON JONES, deceased; ANTHONY JONES, a minor by and through his parent, THERESA JONES; HUNTER JONES, a minor by and through his parent, THERESA JONES; CHRISTINA GIBSON; individually and as Executrix of the Estate of JONATHAN GIBSON, deceased; MAKAYLIN GIBSON, a minor by and through her parent, CHRISTINA GIBSON; ALEXANDER GIBSON, a minor by and through his parent, CHRISTINA GIBSON,

                                    Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF THE NAVY; UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation; GIBBS & COX, INC., a New York Corporation; BATH IRON WORKS CORPORATION, a Maine Corporation; HUNTINGTON INGALLS INDUSTRIES, INC., a Delaware Corporation; and JANA VAVASSEUR, an individual,

                                    Defendants.

CASE NO. 15cv2087-WQH-AGS

ORDER

HAYES, Judge:

    The matters before the Court are the Motion to Dismiss filed by Defendant Bath

Iron Works Corporation ("Iron Works") (ECF No. 77) and the Motion to Dismiss filed

by Defendant Gibbs & Cox, Inc. ("Gibbs") (ECF No. 79).

**I. Background**

On September 18, 2015, Plaintiffs commenced this action seeking damages for the deaths of Lieutenant Commander Landon Jones and Chief Warrant Officer 3 Jonathan Gibson. (ECF No. 1). On November 13, 2015, Plaintiffs filed a first amended complaint. (ECF No. 9). On May 27, 2016, this Court issued an Order granting the motions to dismiss filed by Defendants Prudential, Huntington, Gibbs, Iron Works, and the United States. (ECF No. 60). On July 18, 2016, the Court granted Plaintiffs' motion to file a second amended complaint in this action. (ECF No. 72). On July 19, 2016, Plaintiffs filed the second amended complaint ("SAC"). (ECF No. 73).

On August 2, 2016, Iron Works filed the Motion to Dismiss the Second Amended Complaint. (ECF No. 77). On August 22, 2016, Plaintiffs filed a response in opposition. (ECF No. 80). On August 30, 2016, Iron Works filed a reply. (ECF No. 82).

On August 5, 2016, Gibbs filed the Motion to Dismiss the Second Amended Complaint. (ECF No. 79). On August 28, 2016, Plaintiffs filed a response in opposition. (ECF No. 81). On September 2, 2016, Gibbs filed a reply. (ECF No. 85).

**II. Allegations in the Second Amended Complaint (ECF No. 73)**

Plaintiffs allege two causes of action in the SAC: (1) negligence (design defect) as to Defendants Iron Works and Gibbs, and (2) violation of 38 U.S.C. § 1967 *et seq.*, negligent failure to notify as to Defendant Navy. (ECF No. 73 at 12-15). Plaintiffs' negligence claim is brought pursuant to the Death on the High Seas Act, 46 U.S.C. §§ 30301-30308 ("DOHSA") and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. *Id.* at ¶ 1.

Plaintiffs allege that on September 22, 2013, "Lieutenant Commander Landon Jones ('Jones') and Chief Warrant Officer 3 Jonathan Gibson ('Gibson') died and were forever lost at sea . . . when their MH-60S helicopter, callsign 'INDIAN 617,' was forced off the side of the [USS William P.] LAWRENCE after being hit by a wave of

water that was caused by the unreasonably dangerous and defective design of the LAWRENCE's low freeboard flightdeck." *Id.* at ¶ 15. "The freeboard is the distance between the waterline and the flightdeck. The smaller or lower the freeboard, the closer the flight deck is to the water." *Id.* at ¶ 17. "[A]ircrew and flightdeck crews on low freeboard ships are more vulnerable to waves washing over the flightdeck and injuring or killing them, or damaging equipment and aircraft." *Id.*

Plaintiffs allege that "GIBBS designed the original Arleigh Burke Class Destroyer (DDG 51) and BATH was the lead design agent for the follow-on modification to the Arleigh Burke Class Destroyer (DDG 79) otherwise known as 'Flight IIA.' The LAWRENCE was a Flight IIA variant of the Arleigh Burke Class Destroyer." *Id.* at ¶ 16. Plaintiffs allege that "[b]oth variations of the Arleigh Burke Class Destroyers suffered from a design defect known as low-freeboard that unreasonably and unnecessarily endangered aircraft and aircrew operating on its flightdecks." *Id.*

## III. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under . . . [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (citation omitted). "To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts to state a facially

1  plausible claim to relief." *Id.* (citation omitted).

2  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
3  requires more than labels and conclusions, and a formulaic recitation of the elements
4  of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
5  (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must
6  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
7  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,
8  550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual
9  content that allows the court to draw the reasonable inference that the defendant is liable
10 for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must
11 accept as true all of the allegations contained in a complaint is inapplicable to legal
12 conclusions. Threadbare recitals of the elements of a cause of action, supported by
13 mere conclusory statements, do not suffice." *Id.* (citation omitted). "When there are
14 well-pleaded factual allegations, a court should assume their veracity and then
15 determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In
16 sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content,
17 and reasonable inferences from that content, must be plausibly suggestive of a claim
18 entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.
19 2009) (citation omitted).

20  **B. Contentions of the Parties**

21  Iron Works contends that it cannot be held liable on Plaintiffs' negligence claim
22 based upon a recent Court of Appeals decision held that "a Navy ship is not a 'product'
23 within the meaning of products liability law." (ECF No. 77-1 at 5) (citing *McIndoe v.*
24 *Huntington Ingalls Inc.*, 817 F.3d 1170 (9th Cir. 2016)). Iron Works contends that "[i]f
25 a Navy ship is not a 'product' for the purposes of products liability, then no builder,
26 manufacturer, designer, or seller could be subject to liability on a theory of products
27 liability." (ECF No. 82 at 4). Iron Works contends that while *McIndoe* was "decided
28 in the context of claims for strict products liability, . . . the same rationale applies to

1    Plaintiffs'" negligence claim.  (ECF No. 77-1 at 6).  Iron Works contends that "there

2    is no practical difference between a claim for strict products liability and a claim for

3    negligence products liability."  *Id.*

4         Gibbs "incorporates and joins in the arguments and Motion to Dismiss filed by

5    defendant Bath Iron Works Corporation . . . in its entirety."  (ECF No. 79-1 at 4 n.1)

6    (citing ECF No. 77).  Gibbs further contends that it "anticipates Plaintiffs will argue

7    that *McIndoe* permitted a negligence claim to proceed, however, that claim is entirely

8    distinct from the alleged negligence claim here."  *Id.* at 11.  Gibbs contends that the

9    negligence claim in *McIndoe* proceeded because it concerned "products or materials

10   [that] were installed aboard the ships and the alleged defect was as to those products or

11   materials."  *Id.*  Gibbs contends that the negligence claim in *McIndoe* was "entirely

12   separate from" a "claim that the ship itself, by its design, was a 'product' and was

13   defective.'"  *Id.*

14        Plaintiffs contend that *McIndoe* addressed a strict products liability claim against

15   a ship manufacturer, unlike Plaintiffs' negligent design claim against two ship

16   designers.  (ECF Nos. 80 at 11-13; 81 at 11-13).  Plaintiffs contend that "the holding

17   in *McIndoe* . . . specifically allowed a negligence claim to proceed[.]"  (ECF Nos. 80

18   at 14; 81 at 14-15).  Plaintiffs contend they "are not seeking to hold Defendant liable

19   for 'many thousands' of component parts of the ship.  Rather, Plaintiffs are seeking to

20   hold Defendant liable for the defective element of the Lawrence it designed, the

21   low-freeboard flightdeck."  (ECF Nos. 80 at 13; 81 at 13).  Plaintiffs contend that both

22   Defendants "improperly and prematurely shift[] the responsibility for the design of the

23   ship to the Navy without any facts or evidence to support [their] claims."  (ECF Nos.

24   80 at 13; 81 at 14).

25   **C. Analysis**

26        By adopting DOHSA, Congress "creat[ed] a remedy in admiralty for wrongful

27   deaths more than three miles from shore."  *Mobil Oil Corp. v. Higginbotham*, 436 U.S.

28   618, 620 (1978).  "DOHSA creates the cause of action for the decedent's immediate

family; it limits recovery to pecuniary damages, eliminates any contributory negligence bar to recovery, and preserves the ability to bring claims under the law of another country." *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1123 (9th Cir. 2010). DOHSA has a "comprehensive scope," and "the Supreme Court has determined the Act displaces other remedies and causes of action." *Id.* The statute applies "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States[.]" 46 U.S.C. § 30302. DOHSA applies to both negligence and strict liability claims. *See Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1038-40 (9th Cir. 1985) (affirming a district court's jurisdiction over an "action alleging negligence, strict tort, and breach of warranty" brought under DOHSA).

In this case, Plaintiffs bring their negligence claim against Iron Works and Gibbs under DOHSA. (ECF No. 73 at ¶ 1). DOHSA "provide[s] the exclusive recovery for deaths on the high seas[,]" and the statute applies specifically to death at sea caused by "neglect[.]" *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 117, 121 (1998); 46 U.S.C. § 30302. Negligence claims sound in admiralty law. *See East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 859 (1986) ("admiralty law . . . already recognizes a general theory of liability for negligence").

In *McIndoe*, the Court of Appeals addressed "whether a naval warship is to be considered a 'product' in" a strict products liability action. *McIndoe*, 817 F.3d at 1173. The Court of Appeals observed

> [That w]hen analyzing products-liability claims under maritime law, we look to the Restatement of Torts—particularly the most recent Third Restatement—for guidance . . . The Third Restatement defines a 'product' subject to strict liability as 'tangible personal property distributed commercially for use or consumption.' . . . '[O]nly when the complained-of injury was allegedly caused by a defect in something within this . . . definition of 'product' should the defendant manufacturer or seller be strictly liable for the harm caused. Injuries caused by other items are actionable only 'under negligence, misrepresentation, or some other liability theory.'

*Id.* (quoting Restatement (Third) of Torts: Prods. Liab. § 19(a)); reporter's note, cmt. a). The Court of Appeals held that the "goals" of strict liability "would be advanced

little by imposing [strict] liability on the builder of a custom-ordered naval ship." *Id.* at 1174.

The Court of Appeals stated that it "agree[d] . . . that [the plaintiffs'] heirs cannot sustain an action for strict products liability premised upon the notion that the warships in question are themselves 'products' under maritime law.  Accordingly, the heirs may prevail only under a theory of negligence." *Id.*  The Court of Appeals then proceeded to separately analyze the *McIndoe* plaintiffs' "general negligence claims" under a substantial contributing factor analysis.  *Id.*

In this case, Plaintiffs have brought a negligence claim against Defendants. Plaintiffs allege that Gibbs "designed the original Arleigh Burke Class Destroyer (DDG 51)[,]" and that Iron Works "was the lead design agent for the follow-on modification to the Arleigh Burke Class Destroyer (DDG 79) otherwise known as 'Flight IIA.'  The LAWRENCE was a Flight IIA variant of the Arleigh Burke Class Destroyer."  (ECF No. 73 at ¶ 16).  Plaintiffs allege that Defendants "owed a duty to Plaintiffs to exercise reasonable care in the design of the Arleigh Burke Class Destroyer such that the design of the ship was safe for one of its primary intended purposes: the safe recovery of helicopters on Arleigh Burke Class Destroyer flightdecks." *Id.* at ¶ 44.  Plaintiffs allege that Defendants' design of the flightdeck "was a substantial factor in Plaintiffs' decedents, Landon Jones and Jonathan Gibson, to suffer devastating injuries and perish when the wave hit INDIAN 617, destroying it and causing it to be washed overboard." *Id.* at ¶ 47.

The elements of a general negligence claim are duty, breach of duty, proximate cause, and damages. *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).  "Under a negligence theory the fault arises from a failure to adhere to an accepted standard of conduct.  Under strict liability, fault lies in the placing of a defective product in the stream of commerce." *Emerson G.M. Diesel, Inc. v. Alaskan Enter.*, 732 F.2d 1468, 1473 (9th Cir. 1984), abrogated on other grounds by *East River*, 476 U.S. at 870.  In

this case, Plaintiff relies on allegations of duty[1], breach of duty, proximate cause, and damages against Defendants Iron Works and Gibbs.  *McIndoe* does not preclude Plaintiffs from bringing a negligence claim against Defendants.  In *McIndoe*, the Court of Appeals addressed whether a naval warship is considered a 'product' for the purpose of a strict liability action – and it held that "[i]njuries caused by other items are actionable only under negligence . . . or some other liability theory."  *McIndoe*, 817 F.3d at 1173 (citation omitted).

Accepting Plaintiffs' factual allegations as true, the Court finds that Plaintiffs have "state[d] a claim to relief that is plausible on its face" regarding their negligence claim against Defendants Iron Works and Gibbs.  *Iqbal*, 556 U.S. at 678 (citation omitted).

## IV. Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Iron Works (ECF No. 77) and the Motion to Dismiss filed by Defendant Gibbs (ECF No. 79) are DENIED.

DATED:  December 2, 2016

**WILLIAM Q. HAYES**
United States District Judge

---

[1] The extent of Defendants' duty of care, if any, will depend on the facts of this case.